[S. F. No. 16519.   In Bank.—May 29, 1941.]

W. B. PARKER, as Chairman of the California Commission on Interstate Cooperation et al., Petitioners, v. HARRY B. RILEY, as Controller, etc., Respondent.

84

Charles Josef Carey, Fred B. Wood, Arthur McHenry and Martin McDonough for Petitioners.

Earl Warren, Attorney-General, Robert W. Harrison, Chief Assistant Attorney-General, and Chas. W. Johnson, Deputy Attorney-General, for Respondent.

GIBSON, C. J.—This original petition for a writ of mandate was instituted to compel the respondent Harry B. Riley, as Controller of the State of California, to draw certain warrants in favor of petitioners who are members of the California Commission on Interstate Cooperation, created by Statutes of 1939, chapter 376, page 1710. (See Pol. Code, secs. 332–332.6.) They seek reimbursement for sums expended by them in carrying out the duties of the commission. The petition alleges that certain expenditures were made in conducting the official business of the commission, that the expenditures were properly certified to the respondent, that sufficient funds were appropriated for the use of the commission, but that respondent has refused to draw warrants covering these expenditures. In his answer and return respondent denies that he is under any duty to draw warrants for the expenditures in question, and bases his denial solely upon the contention that the statute creating the commission is unconstitutional and wholly void.

The commission is charged with the duty of furthering the participation of the state as a member of the Council of State Governments, and is required to confer with officials of other states and of the federal government to formulate proposals for cooperation between this state and such other governments. It is instructed to organize and maintain governmental machinery for the purposes set forth, to establish committees and advisory boards, and to employ such persons as are necessary to carry out its duties. The commission is

instructed to report its proposals to the legislature and to the Governor within fifteen days after the convening of each regular legislative session and at such other times as it considers appropriate. The members of the commission and all committees which it may establish serve without compensation, but may receive reimbursement for necessary expenses.

The statute also creates a Senate Committee on Interstate Cooperation and an Assembly Committee on Interstate Cooperation, which are to be chosen as are other committees of each branch of the legislature and which are to function during the *interim* between sessions as well as during the regular sessions. The membership of the Commission on Interstate Cooperation is made up of the five members of the Senate committee, the five members of the Assembly committee, and five officials of the state who are to be appointed by the Governor. The members appointed by the Governor hold office as members of the commission at his pleasure, and the members of the legislature hold office so long as they remain members of the committees of each house.

The commission thus created is designed to further the cooperation between the various states and between the states and the federal government. The statute creating the commission is patterned after a statute enacted in New Jersey (Laws of New Jersey, 1936, ch. 21, p. 32) and similar statutes have been adopted in a majority of the states of the United States. The clear purpose of such legislation is to create machinery of government through which the various states can exchange information and formulate proposals for mutual action to be submitted to their individual state governments. It is contended on behalf of the respondent, however, that the particular commission here created is in violation of express provisions of the California Constitution, and that the entire plan must therefore fail.

In so far as the statute deals with the creation of *interim* committees in each of the houses of the legislature, no successful attack can be made upon it. Indeed, the legislative committees created under this statute appear to satisfy fully the requirements enunciated in the opinions of this court in *Special Assembly Interim Committee* v. *Southard,* 13 Cal. (2d) 497 [90 Pac. (2d) 304], and *Swing* v. *Riley,* 13 Cal. (2d) 513 [90 Pac. (2d) 313].

The most serious challenge to the constitutionality of this legislation is advanced under section 19 of article IV of the California Constitution. That section since 1916 has provided: "No senator or member of assembly shall, during the term for which he shall have been elected, hold or accept any office, trust or employment under this state; provided, that this provision shall not apply to any office filled by election by the people." Respondent contends that membership upon the California Commission on Interstate Cooperation constitutes an "office, trust, or employment" under the constitutional provision, and that members of the legislature cannot lawfully be made members of such a commission. Prior to 1916 the comparable provision was far less stringent and only prohibited the acceptance by a legislator of "any civil office of profit" which was created or the emoluments of which had been increased during his term of office as a legislator. Constitutional provisions in many other states have retained the less stringent form prohibiting a "civil appointment" (Illinois Const., art. IV, sec. 15; New York Const., art. III, sec. 7) or a "civil office" (Colorado Const., art. V, sec. 8; Montana Const., art. 5, sec. 7; Nevada Const., art. 4, sec. 8). Such constitutional provisions have been interpreted to permit the acceptance by a legislator during his term of office of positions which do not amount to an "office" but are mere "employment". (*Hudson* v. *Annear,* 101 Colo. 551 [75 Pac. (2d) 587]; *State Tax Com.* v. *Harrington,* 126 Md. 157 [94 Atl. 537]; *State ex rel. Barney* v. *Hawkins,* 79 Mont. 506 [257 Pac. 411, 53 A. L. R. 583]; *State ex rel. Kendall* v. *Cole,* 38 Nev. 215 [148 Pac. 551].) A similar conclusion was reached in California under the older constitutional provision. (*Curtin* v. *State,* 61 Cal. App. 377, 390 [214 Pac. 1030].) After the amendment of this provision in 1916, however, it was held that such positions as that of a deputy district attorney or that of auditor of the State Board of Prison Directors constitute the kind of "office, trust, or employment" to which a legislator may not be appointed. (*Satterwhite* v. *Garrison,* 34 Cal. App. 734 [168 Pac. 1053]; *Chenoweth* v. *Chambers,* 33 Cal. App. 104 [164 Pac. 428].) The amended provision has been said to be far more sweeping than its predecessor and to have been designed to prevent the acquiring by members of the legislature of positions on the state payroll which might prevent their maintaining a desirable independence of mind.

(*Chenoweth* v. *Chambers, supra,* p. 106.) It has been indicated, however, that compensation or emolument may not be a necessary element where the position involved falls within the more important classification of an "office". (See *Patton* v. *Board of Health,* 127 Cal. 388, 395 [59 Pac. 702, 78 Am. St. Rep. 66].) ■ It is clear, therefore, that the purpose of the constitutional provision here involved is to prevent the acceptance by a legislator of any position under the state, whether an office or merely employment, which creates the opportunity for private aggrandizement, pecuniary in nature or otherwise. (See *State ex rel. Barney* v. *Hawkins,* 79 Mont. 506, 526 [257 Pac. 411, 53 A. L. R. 583]; *Gillespie* v. *Barrett,* 368 Ill. 612, 617 [15 N. E. (2d) 513].)

The sweeping terms of the California constitutional provision thus prevent the appointment of a member of the legislature to any other position of trust or responsibility under the state. It may be noted, however, that the positions created by the statute here attacked lack certain elements usually associated with an "office" or "trust". Thus, it is generally said that an office or trust requires the vesting in an individual of a portion of the sovereign powers of the state. (*Patton* v. *Board of Health, supra,* pp. 394, 398; *Curtin* v. *State, supra,* p. 390; *Leymel* v. *Johnson,* 105 Cal. App. 694, 699 [288 Pac. 858]; *Couts* v. *County of San Diego,* 139 Cal. App. 706, 712 [34 Pac. (2d) 812]; *State ex rel. Barney* v. *Hawkins, supra,* p. 520; *State ex rel. Kendall* v. *Cole, supra;* 53 A. L. R. 595, 602.) The positions here created do not measure up to so high a standard. They involve merely the interchange of information, the assembling of data, and the formulation of proposals to be placed before the legislature. Such tasks do not require the exercise of a part of the sovereign power of the state. It may also be doubted whether the positions here conferred constitute an "employment" by the state since no compensation is provided for the members of the commission. Yet, while distinctions might thus be drawn to show that membership on the commission is not within the scope of the constitutional prohibition, we prefer to place our decision on other more fundamental grounds.

■ Assuming, but not deciding, that the positions created under this statute amount to an "office, trust, or employment" under the state, we do not think the trust thus imposed

upon selected members of the legislature is in violation of the constitutional prohibition. The constitutional provision clearly implies that the prohibition is directed at the conferring of any *other* office, trust, or employment upon a member of the legislature. A member of the legislature is already an officer holding a position of trust under the state government. Where a statute merely makes available new machinery and new methods by which particular legislators may keep themselves informed upon specific problems, it cannot be said to have imposed upon them any new office or trust. The additional duties which rest upon the legislative members of the commission are identical in purpose and kind with those which they already perform. As was said in *People* v. *Tremaine,* 252 N. Y. 27, 41 [168 N. E. 817], "The duties of members of the Legislature may be enlarged without making a civil appointment or creating a new office, so long as the duties are such as may be properly attached to the legislative office. . . . " We hold, therefore, that the statute here attacked did not contemplate the conferring of any new office, · trust, or employment upon the legislative members of this commission. (*Special Assembly Interim Com.* v. *Southard, supra,* p. 499; *Mulnix* v. *Elliott,* 62 Colo. 46 [156 Pac. 216]; *Terrell* v. *King,* 118 Tex. 237, 248 [14 S. W. (2d) 786].)

It must not be assumed, however, that legislative activities may be expanded indefinitely through the creation of separate agencies responsible primarily to the legislature. This sort of expansion would soon lead to a legislative usurpation of power incompatible with the proper exercise of its lawmaking function. The Constitution forbids any such assumption of duties by the legislative branch of government, and a statute conferring a nonlegislative office or trust upon members of the legislature would be clearly unconstitutional. But under the particular facts set forth, where the responsibilities imposed are merely those of gathering information and making recommendations, we think the duties must be considered incidental to the lawmaking function. The creation of a separate commission in this instance involved merely the use of new machinery in carrying out a trust already reposed in the members of the legislature. Under such circumstances the statute does not fall within the prohibition of the constitutional provision relied upon, and the contentions of respondent in this regard cannot be sustained.

The further contention is made by respondent that the statute creating the California Commission on Interstate Cooperation is unconstitutional upon the ground that it violates section 1, article III of the California Constitution which provides: ''The powers of the government of the State of California shall be divided into three separate departments— the legislative, executive and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or permitted.'' The duties imposed upon the commission, as we have stated, are those of investigation and consultation. The statutory plan culminates in the recommendations or proposals made by the commission from time to time. Such activity, in so far as it requires classification, may properly be described as the performance of duties which are incidental and ancillary to the ultimate performance of lawmaking functions by the legislature itself. It is difficult to see how the general doctrine of political theory designed to apply to the basic and fundamental powers of government can be said to prohibit the exercise of such subsidiary and incidental duties. Respondent insists, however, that all the functions of government, whatever their importance, must be clearly allocated and classified as legislative, executive, or judicial. In the present instance, it is urged that certain of the duties performed by the commission are executive in nature and it is therefore argued that the doctrine of separation of powers prevents the exercise of such functions by members of the legislative branch of the government. If the duties were classified as legislative in nature, it is apparent that the same doctrine would prevent the exercise of such functions by the executive members of the commission. Whichever category is selected, under the theory thus advanced, the same result must be reached, that is, the statute must be held unconstitutional as violating the doctrine of separation of powers.

That doctrine, however, cannot be carried to such lengths. The courts have long recognized that its primary purpose is to prevent the combination in the hands of a single person or group of the basic or fundamental powers of government. (See *People* v. *Provines,* 34 Cal. 520, 539; *J. W. Hampton, Jr., & Co.* v. *United States,* 276 U. S. 394, 406 [48 Sup. Ct. 348,

72 L. Ed. 624]; *State* v. *Bates,* 96 Minn. 110, 117, 118 [104 N. W. 709, 113 Am. St. Rep. 612]; *State ex rel. Wisconsin Inspection Bureau* v. *Whitman,* 196 Wis. 472 [220 N. W. 929]; Story, Constitution, 5th ed., p. 393; Green, Separation of Governmental Powers (1920), 29 Yale L. J. 369; (1938) 24 Cornell L. Q. 13, 15–56.) The doctrine has not been interpreted as requiring the rigid classification of all the incidental activities of government, with the result that once a technique or method of procedure is associated with a particular branch of the government, it can never be used thereafter by another. Thus, although the ascertainment of facts based upon evidence taken in the course of a formal hearing is normally associated with an exercise of the judicial power, it may be entirely proper in the exercise of legislative or executive power (*Louisville & N. R. R. Co.* v. *Garrett,* 231 U. S. 298, 307 [34 Sup. Ct. 48, 58 L. Ed. 229]; see, Brown, Administrative Commissions and the Judicial Power (1935), 19 Minn. L. Rev. 261, 275), and may be accompanied by the power to compel the attendance of witnesses and the power to punish for contempt. (*In re Battelle,* 207 Cal. 227 [277 Pac. 725, 65 A. L. R. 1497].) Similarly, although it is normally the duty of the legislature to make the determinations of fact upon the basis of which legislation is to become effective, that duty may properly be devolved upon members of the executive branch of the government. (*Brock* v. *Superior Court,* 9 Cal. (2d) 291 [71 Pac. (2d) 209, 114 A. L. R. 127]; *Olive Proration etc. Com.* v. *Agricultural Prorate Commission,* 17 Cal. (2d) 204 [109 Pac. (2d) 918].)

The separation of powers doctrine does not require that we classify these incidental governmental duties, and that we thereafter limit such activity to the particular branch of the government first selected. Such subsidiary duties may properly be performed by a variety of governmental agencies. In the instant case, the duty of correlating information and making recommendations is the kind of subsidiary activity which the legislature could perform through its own members, or which it could delegate to others to perform. Intelligent legislation upon the complicated problems of modern society is impossible in the absence of accurate information on the part of the legislators, and any reasonable procedure for securing such information is proper. (*In re Battelle, supra; Phillips* v. *Riley,* 6 Cal. (2d) 414 [57 Pac. (2d) 1308]; *Spe-*

*cial Assembly Interim Com.* v. *Southard, supra.*) Nor does the Constitution prohibit the delegation of such incidental and subordinate tasks. As the court said in *Attorney-General* v. *Brissenden,* 271 Mass. 172, 180 [171 N. E. 82], where such duties were imposed upon the attorney-general, "The ascertainment of facts in its essence is not a legislative function. It is simply ancillary to legislation. It may be accomplished in divers ways. While it may be done by the Legislature itself, it is a responsibility not infrequently placed upon committees and individuals. . . . Frequent illustrations of this practice also are found respecting permanent boards or commissions. . . . The ascertainment of pertinent facts for legislation is within the power of the lawmaking department of government. When a legislative body has a right to do an act it must be allowed to select the means within reasonable bounds. It is not precluded from delegating incidental powers which it may exercise itself in aid of its primary functions. . . . Familiar methods are by appropriating the results of studies already made by itself or by others, by conducting an inquiry through a committee of its members, or by utilizing an existing commission or board to make and report the results of a research." Courts have approved the creation of legislative agencies such as the commission created by this statute. (*Attorney-General* v. *Brissenden, supra*; *Annenberg* v. *Roberts,* 333 Pa. 203, 211 [2 Atl. (2d) 612]; *People* v. *Charles Schweinler Press,* 214 N. Y. 395, 412 [108 N. E. 639, Ann. Cas. 1916D, 1059, L. R. A. 1918A, 1124]; *Terrell* v. *King, supra; Mulnix* v. *Elliott, supra.*) The statute creating the California Commission on Interstate Cooperation does not, therefore, violate either of the constitutional provisions relied upon by respondent.

Let the writ issue as prayed.

Shenk, J., Curtis, J., Traynor, J., Edmonds, J., and Carter, J., concurred.