128 Cal.Rptr.2d 869 (2002)
104 Cal.App.4th 1232
MARINE FORESTS SOCIETY et al., Plaintiffs and Respondents,
v.
CALIFORNIA COASTAL COMMISSION et al., Defendants and Appellants.
No. C038753.
Court of Appeal, Third District.
December 30, 2002.
As Modified on Denial of Rehearing January 23, 2003.
*871 The Zumbrun Law Firm and Ronald A. Zumbrun, Sacramento, for Plaintiffs and Respondents.
Sheppard, Mullin, Richter & Hampton, Joseph E. Petrillo, David P. Lanferman, Thomas D. Roth, Peter F. Ziblatt, San Francisco, for the Home Builders Association of Northern California, The California Building Industry Association, The Building Industry Legal Defense Foundation, The Building Industry Association of San Diego and The California Association of Realtors.
M. Reed Hopper and Anne M. Hayes, for Pacific Legal Foundation.
Jenkins & Hogin, Christi Hogin, Malibu, and Gregg Kovacevich, for the City of Malibu.
Berger & Norton and Michael M. Berger, Los Angeles, for Signal Landmark *872 and Hearthside Homes as Amici Curiae on behalf of Plaintiffs and Respondents.
Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, J. Matthew Rodriquez, Senior Assistant Attorney General, Joseph Barbieri, Supervising Deputy Attorney General, and Lisa Trankley, Deputy Attorney General, for Defendants and Appellants.
*870 SCOTLAND, P.J.
The California Coastal Commission (the Commission) is the "state coastal zone planning and management agency" with the primary responsibility for implementing the provisions of the California Coastal Act of 1976. (Pub. Resources Code, §§ 30300, 30330; further section references are to the Public Resources Code unless otherwise specified.) It consists of 12 voting members, 4 appointed by the Governor and 8 appointed by the Legislature, who serve two-year terms at the pleasure of their appointing authorities. (§§ 30301, 30301.5, 30312.) The Commission acts by vote of a majority of its appointed members. (E.g., §§ 30333, 30512.)
When the Commission notified Marine Forests Society (Marine Forests) that it intended to commence cease and desist proceedings regarding Marine Forests's experimental man-made reef on the ocean floor off of Newport Harbor in southern California, Marine Forests filed an action seeking to enjoin the Commission from doing so. Marine Forests claimed, among other things, that the Commission did not have the authority to issue cease and desist orders or to grant or deny permits for coastal development because the scheme for appointment of its voting members gives the legislative branch control over the Commission, thus impermissibly interfering with the Commission's executive branch responsibility to execute the laws.
The trial court held that the ability of the Senate Committee on Rules and the Speaker of the Assembly to remove a majority of the Commission's voting members at the pleasure of those appointing authorities effectively makes the Commission a "legislative agency." Therefore, the court enjoined the Commission "as a legislative body ... from exceeding its jurisdiction and violating the Separation of Powers Clause of the California Constitution [Cal. Const., art. III, § 3] which precludes it from granting, denying or conditioning permits or [from] issuing and hearing cease and desist orders." The Commission appeals. (Code Civ. Proc., § 904.1, subd. (a)(6).)
For reasons that follow, we conclude that the Commission's interpretation and implementation of the California Coastal Act of 1976 is an executive function, and that the appointment structure giving the Senate Committee on Rules and the Speaker of the Assembly the power not only to appoint a majority of the Commission's voting members but also to remove them at will contravenes the separation of powers clause of California's Constitution. The flaw is that the unfettered power to remove the majority of the Commission's voting members, and to replace them with others, if they act in a manner disfavored by the Senate Committee on Rules and the Speaker of the Assembly makes those Commission members subservient to the Legislature. In a practical sense, this unrestrained power to replace a majority of the Commission's voting members, and the presumed desire of those members to avoid being removed from their positions, allows the legislative branch not only to declare the law but also to control the Commission's execution of the law and exercise of its quasi-judicial powers.
Accordingly, we shall affirm the judgment. We emphasize, however, that Marine *873 Forests made a timely separation of powers objection and pursued its remedies in a timely manner. We do not address the rights and interests of other parties to prior actions of the Commission.

BACKGROUND
The California Coastal Act of 1976 (the Coastal Act) (§ 30000 et seq.) is a comprehensive scheme governing land use planning for the entire coastal zone of California. It contains specific policies pertaining to public access (§§ 30210-30214), recreation (§§ 30220-30224), the marine environment (§§ 30230-30237), coastal resources (§§ 30240-30244), and various categories of development, including residential, industrial, port, and energy facilities. (§ 30250 et seq.) In sections 30001, 30001.5 and 30004, the Coastal Act sets forth detailed recitations of legislative goals that (1) declare the need to protect the distinct and valuable natural resources of California's coastal zone, (2) state that planned development of the coastal zone is essential to the economic and social welfare of the people of this state, (3) advocate the protection, maintenance, and balanced development of the coastal zone environment, (4) seek to maximize public access to the coast consistent with sound resources conservation as well as the constitutional protection of private property rights, (5) encourage local and state initiative and cooperation in planning coastal use, and (6) declare that, in order to achieve maximum responsiveness to local conditions, it is necessary to rely heavily on local government and local land use planning procedures and enforcement while (a) providing for maximum state involvement in federal activities, (b) protecting regional, state, and national interests, and (c) coordinating the many agencies whose activities affect the coastal zone.
The Coastal Act established the Commission as a permanent regulatory body invested with the primary responsibility to ensure continued coastal planning and management through implementation of the provisions of the Coastal Act. (§ 30330.) The Commission may exercise all the powers set forth in the Federal Coastal Zone Management Act of 1972 (16 U.S.C. 1451 et seq.) or in any other federal act that relates to the planning or management of the coastal zone. (§ 30330.) It is authorized to promulgate regulations to carry out the purposes and provisions of the Coastal Act (§ 30333), to conduct additional studies that the Commission determines to be necessary to accomplish the goals of the Coastal Act (§ 30341), and to prepare an informational and educational guide to coastal resources for the public. (§ 30344.)
The Commission also hears and decides applications for coastal permits (§§ 30600-30627), reviews the coastal programs of local governments (§§ 30512-30514), and issues cease and desist orders to halt or remove illegal development. (§ 30809.)
As we have noted, the Commission has 12 voting members, who are appointed in the following manner: the Governor selects 4 members (2 from the public at large, 1 from a designated north coast region of the state, and 1 from the south central coast region); the Speaker of the Assembly selects 4 members (2 from the public at large, 1 from the central coast region, and 1 from the San Diego coast region); and the Senate Committee on Rules selects 4 members (2 from the public at large, 1 from the north central coast region, and 1 from the south coast region). (§§ 30301, subds.(e), (f), 30301.5.) Except for appointments from the public at large, the selections must be made from a list established by local government officials. (§ 30301.2.) Members of the Commission *874 serve two-year terms at the pleasure of their appointing authority. (§ 30312.)
Marine Forests is a nonprofit corporation whose purpose is the development of an experimental research program for the creation of marine forests to replace lost marine habitat. After incorporating in 1986, Marine Forests planted its first experimental marine forest on a sandy plain near Newport Harbor in Orange County, California. The marine forest is made of various materials, including used tires, plastic jugs, and concrete blocks.
In June 1993, the Commission opined that Marine Forests's experiment was a coastal zone development requiring a permit under the Coastal Act. The Commission denied Marine Forests's application for an after-the-fact permit, and in October 1999, it issued a Notice of Intent to Commence Cease and Desist Order Proceedings. After a hearing, the Commission issued a cease and desist order for Marine Forests's experimental site. The order was stayed as the result of Marine Forests's lawsuit.
Marine Forests's complaint included a cause of action for injunctive relief on the ground that the Commission did not have the authority to issue cease and desist orders. Marine Forests claimed that the Commission lacked such authority because the mechanism by which the majority of its voting members are appointed violates the separation of powers doctrine.
The parties filed cross-motions for summary adjudication of Marine Forests's separation of powers cause of action based on stipulated facts. Marine Forests contended, and the Commission disputed, that the Commission's activities violate the separation of powers clause in article III, section 3 of the California Constitution and the appointments clause in article V, section 5.
According to Marine Forests, the statutory method for appointing the Commission's voting members gives the legislative branch of state government control of the majority of the voting members of the Commission, which impermissibly interferes with the executive branch's constitutional authority to execute the laws. Marine Forests contends that, because of this legislative control, the Commission can perform policymaking functions but should not be permitted to exercise executive or quasi-judicial functions.
The trial court agreed with Marine Forests and granted its motion for summary adjudication and request for injunctive relief. The court ruled that the power of the Senate Committee on Rules and the Speaker of the Assembly to appoint the majority of the Commission's voting members and to remove them at will effectively renders the Commission a "legislative agency" because the Commission is not subject to the control of the executive branch. Accordingly, the court enjoined the Commission from granting, denying, or conditioning permits or from issuing cease and desist orders because such actions by a legislative body violate the separation of powers clause of the California Constitution. The court stayed enforcement of its order and enforcement of the Commission's cease and desist order pending appellate review of the constitutional issue.
The Commission's appeal involves a constitutional challenge and a pure question of law. Thus, we apply a de novo standard of review. (Ghirardo v. Antonioli (1994) 8 Cal.4th 791, 799-801, 35 Cal. Rptr.2d 418, 883 P.2d 960.)

DISCUSSION

I
Article III, section 3 of the California Constitution states: "The powers of state *875 government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."
"The separation of powers doctrine limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch. [Citations.] `"The courts have long recognized that [the] primary purpose [of the ... doctrine] is to prevent the combination in the hands of a single person or group of the basic or fundamental powers of government."' [Citations.] To serve this purpose, courts `"have not hesitated to strike down provisions of law that either accrete to a single Branch powers more appropriately diffused among separate Branches or that undermine the authority and independence of one or another coordinate Branch."' [Citations.]" (Carmel Valley Fire Protection Dist. v. State of California (2001) 25 Cal.4th 287, 297, 105 Cal.Rptr.2d 636, 20 P.3d 533 (hereafter Carmel Valley).)
However, the separation of powers doctrine recognizes that the three branches of government are interdependent. Accordingly, "it permits actions of one branch that may `significantly affect those of another branch' [citation]" as long as there is no material impairment of the other branch's core functions. (Carmel Valley, supra, 25 Cal.4th at p. 298, 105 Cal.Rptr.2d 636, 20 P.3d 533.) "`The purpose of the doctrine is to prevent one branch of government from exercising the complete power constitutionally vested in another [citation]; it is not intended to prohibit one branch from taking action properly within its sphere that has the incidental effect of duplicating a function or procedure delegated to another branch.' [Citation.]" (Id, at p. 298, 105 Cal.Rptr.2d 636, 20 P.3d 533, orig. italics.)

II
"In general it may be said that it is for the Legislature to make public policy and for the executive to carry out the policy established by the Legislature. In practice the complexity of public business necessitates that many of the functions of government be accomplished by administrative agencies. [Citation.]" (California Radioactive Materials Management Forum v. Department of Health Services (1993) 15 Cal.App.4th 841, 870, 19 Cal. Rptr.2d 357 (hereafter Radioactive Materials); disapproved on another point in Carmel Valley, supra, 25 Cal.4th at p. 305, fn. 5, 105 Cal.Rptr.2d 636, 20 P.3d 533.)
There can be no doubt that "[a]dministrative agencies are part of the executive branch of government. [Citation.]" (Radioactive Materials, supra, 15 Cal. App.4th at p. 870, 19 Cal.Rptr.2d 357.)
And there can be no doubt that the Commission exercises executive powers.
For one thing, it has been given the authority to "adopt or amend, by vote of a majority of the appointed membership thereof, rules and regulations to carry out the purposes and provisions of [the Coastal Act] ...."(§ 30333.) Such authority constitutes "substantive lawmaking." (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 10, 78 Cal.Rptr.2d 1, 960 P.2d 1031.) Because the Legislature "may make no law except by statute and may enact no statute except by bill" (Cal. Const., art. IV, § 8), it has no power to make law by regulation. Hence, the authority to adopt and amend rules and regulations to carry out the purposes and provisions of the Coastal Act represents the delegation of the Legislature's lawmaking power to an executive agency. (Yamaha Corp. of America v. State Bd. of Equalization, supra, 19 Cal.4th at pp. 10-11, 78 Cal.Rptr.2d 1, 960 P.2d 1031.)
The Commission has other duties and powers that are executive in nature. As we have noted, it has the authority to *876 contract with private or governmental agencies for the performance of any work or services that cannot be performed satisfactorily by the Commission's employees. (§ 30334.) It also has authority to investigate and to determine what, if any, action should be taken against any person or governmental agency that has undertaken, or is threatening to undertake, any action within the jurisdiction of the Commission. (§ 30809.) Other duties of the Commission include reviewing the coastal programs of local governments for compliance with the Coastal Act; the Commission has the authority to refuse to certify those plans if they do not conform with policies specified in the Coastal Act. (§§ 30510-30514.) These duties in the interpretation and implementation of the Coastal Act are the very essence of the power to execute the law. (Bowsher v. Synar (1986) 478 U.S. 714, 733, 106 S.Ct. 3181, 3191, 92 L.Ed.2d 583, 600.)
In executing the Coastal Act, the Commission also grants and denies permits, issues cease and desist orders, and performs other review functions (§§ 30600, 30601-30627, 30809-30811), all of which are exercises of quasi-judicial power. (Yost v. Thomas (1984) 36 Cal.3d 561, 572, 205 Cal.Rptr. 801, 685 P.2d 1152; City of Coronado v. California Coastal Zone Conservation Com. (1977) 69 Cal.App.3d 570, 574, 138 Cal.Rptr. 241.) An administrative agency may exercise quasi-judicial powers if (1) the exercise of such power is incidental to, and reasonably necessary to accomplish, a function or power properly exercised by that agency, and (2) the essential judicial power remains ultimately in the courts through review of the quasi-judicial determinations. (Bradshaw v. Park (1994) 29 Cal.App.4th 1267, 1275, 34 Cal.Rptr.2d 872; In re Danielle W. (1989) 207 Cal. App.3d 1227, 1236, 255 Cal.Rptr. 344.) Therefore, assuming the requisite judicial review exists, it generally is appropriate for an administrative agency to exercise quasi-judicial powers because this is incidental to, and reasonably necessary to effectuate, the agency's executive power to implement and execute the law. But this is an executive power to be exercised in aid of the agency's executive functions; it is not a legislative power.

III
The Commission contends that the California Constitution does not prohibit the Legislature from appointing members of an executive branch agency; therefore, in the Commission's view, the fact that the Speaker of the Assembly and the Senate Committee on Rules appoint the majority of the Commission's voting members does not violate the separation of powers doctrine stated in article III, section 3 of the California Constitution.
The Commission relies in part upon the California Constitution of 1849, which stated in pertinent part: "All officers whose election or appointment is not provided for by this Constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people, or appointed as the Legislature may direct." (Former art. XI, § 6.) When the Constitution was redrafted in 1879, this provision was retained in former article XX, section 4. It was interpreted as giving the Legislature both the power to establish new offices in addition to those provided for in the Constitution and the power to declare the manner in which non-constitutional officers shall be chosen. This latter power included not only the ability to delegate the duty of appointment to some other person or body, but also the Legislature's ability to make the appointment in question itself. (Ex Parte Gerino (1904) 143 Cal. 412, 414, 77 P. 166; People v. Freeman (1889) 80 Cal. 233, 235-236, 22 P. 173; People v. Langdon (1857) 8 Cal. 1, 16.)
Article XX, section 4 of the California Constitution was repealed by Proposition 15 in the general election of November 3, 1970. Noting that the repealed *877 provision "apparently was intended during the early days of statehood to confirm the power of the Legislature to establish departments and agencies other than those specifically created by the Constitution," the California Constitution Revision Commission concluded: "Since there is nothing elsewhere in the Constitution restricting the now accepted inherent power of the Legislature to establish new offices, agencies, and departments, this provision is constitutionally unnecessary."[1] The ballot pamphlet stated that the repeal of this provision would place the subject matter of the deleted matter under legislative control through the enactment of statutes.
The enactment of a statute replacing former section 4 of article XX was unnecessary in light of Government Code section 1300, which was passed in 1943. (Stats. 1943, ch. 134, § 1300, p. 960.) It provides: "Every officer, the mode of whose appointment is not prescribed by law, shall be appointed by the Governor."
Accordingly, despite the repeal of former section 4 of article XX, the Legislature retains the power to enact legislation creating new agencies, and the power of appointment that is not regulated by the California Constitution may be regulated by statute.[2] If the law so prescribes, the appointment power may be exercised by the Legislature. Only when the appointing authority is not otherwise prescribed by law does this power reside in the Governor.[3]
*878 The Commission points out that, where there is no set term of office, the power to appoint an officer includes the power by the appointing authority to remove the officer at will. (Citing Gov.Code, § 1301 ["Every office, the term of which is not fixed by law, is held at the pleasure of the appointing power"]; Brown v. Superior Court (1975) 15 Cal.3d 52, 55, 123 Cal. Rptr. 377, 538 P.2d 1137; People v. Hill (1857) 7 Cal. 97, 102.) It follows, the Commission argues, that because the Legislature has the authority to enact statutes permitting it to appoint administrative agency officers and to provide for their removal at the pleasure of the appointing party, the Legislature's exercise of such power with respect to the Commission does not violate the separation of powers doctrine. We disagree.[4]
The fact the legislative branch has the power to appoint executive branch officers and to provide for their removal at will does not mean that this authority is without limits. Nor does it mean that the Legislature's exercise of its power in structuring the appointment of the Commission's members does not violate the separation of powers doctrine.
For example, although Congress had the authority to create a Board of Review when relinquishing to an executive agency the operating authority over federal property, it violated the separation of powers doctrine by specifying that the Board of Review would consist of nine Members of Congress who would have veto authority over decisions of the executive agency. (Wash. Airports v. Noise Abatement Citizens (1991) 501 U.S. 252, 255, 263, 270-271, 277, 111 S.Ct. 2298, 2301; 2305, 2308-2309, 2312, 115 L.Ed.2d 236, 245-246, 251, 255-256, 259.)
A different example may be found in Obrien v. Jones (2000) 23 Cal.4th 40, 96 Cal.Rptr.2d 205, 999 P.2d 95, a case in which the California Supreme Court was asked to determine whether a statute permitting the Governor, the Senate Committee on Rules, and the Speaker of the Assembly to appoint three of the five judges of the State Bar Court Hearing Department violated the separation of powers clause of our state Constitution because "the power to discipline licensed attorneys in this state is an expressly reserved, primary, and inherent power of [the Supreme Court]." (Id. at p. 48, 96 Cal.Rptr.2d 205, 999 P.2d 95.)
The Supreme Court did not simply say that the Legislature had the power to make appointments or to dictate the appointing authority and, consequently, there was no constitutional violation. Rather, the relevant question was whether the appointment mechanism materially impaired the court's primary and ultimate authority over the attorney admission and discipline process. (Obrien v. Jones, supra, 23 Cal.4th at pp. 43-44, 50, 96 Cal.Rptr.2d 205, 999 P.2d 95.)
*879 The Supreme Court noted that all applicants for appointment as a State Bar Court judge must be screened and evaluated in light of criteria specified by statute and rules of the Supreme Court (Obrien v. Jones, supra, 23 Cal.4th at p. 51, 96 Cal. Rptr.2d 205, 999 P.2d 95), and must be found qualified by the Applicant Evaluation and Nominating Committee, whose members are appointed by the Supreme Court. (Id. at pp. 52, 53, 96 Cal.Rptr.2d 205, 999 P.2d 95.) And once appointed, the State Bar Court judges "are subject to discipline by [the Supreme Court] on the same grounds as a judge of a court of record in this state." (Id. at p. 46, 96 Cal.Rptr.2d 205, 999 P.2d 95.) In addition, findings and recommendations of State Bar Court judges are subject to independent review by the Review Department, whose members are appointed by the Supreme Court (id. at pp. 54, 55, 96 Cal. Rptr.2d 205, 999 P.2d 95), and the Review Department has the broad authority to accept or reject the findings and recommendations of the hearing judges. (Ibid.) Furthermore, those findings and recommendations must then be presented for the Supreme Court's consideration. (Id. at p. 55, 96 Cal.Rptr.2d 205, 999 P.2d 95.)
Hence, there is no separation of powers violation because the appointment mechanism is subject to sufficient judicially controlled protective measures to ensure that the appointments do not impair the Supreme Court's authority. (Obrien v. Jones, supra, 23 Cal.4th at pp. 44, 55, 57, 96 Cal.Rptr.2d 205, 999 P.2d 95.) "As in the past, all hearing judges [are] subject to the primary authority and supervision of [the Supreme Court]. (Id. at p. 55, 96 Cal.Rptr.2d 205, 999 P.2d 95.)
Likewise, the relevant question with respect to the Commission is whether the appointment mechanism in sections 30301 and 30312 materially infringes upon the inherent authority of that executive branch agency, i.e., undermines the authority and independence of the agency, as Marine Forests alleges, or whether there are sufficient safeguards preventing such an infringement.

IV
In contrast to the appointments to the State Bar Court, the statutory scheme regarding the Commission gives the Legislature virtually unfettered discretion in appointing 8 of the 12 voting members of the Commission. (§§ 30301, 30301.2.) Other than the requirement that 4 of the 8 members appointed by the Legislature must be local elected officials, the scheme provides no standards or procedures for evaluating the qualifications of prospective appointees. Although those appointments are made from a list of nominees provided by the county and city governments within the regions, the appointing authorities have the power to reject all of the nominees on the list and to require the local governments to provide additional nominees. (§ 30301.2.) The only qualification concerning the appointment of public members is that the appointing authorities "shall make good faith efforts to assure that their appointments, as a whole, reflect, to the greatest extent feasible, the economic, social, and geographic diversity of the state." (§ 30310, subd. (b).) And there is no requirement that appointees be found qualified by a review committee controlled by the executive branch.
Even more significant is the fact that, unlike State Bar Court judges who serve set terms and are subject to removal on the same grounds applicable to a judge of a court of record, pursuant to proceedings under the exclusive control of the judiciary (Obrien v. Jones, supra, 23 Cal.4th at p. 46, 96 Cal.Rptr.2d 205, 999 P.2d 95), the Commission members who are appointed *880 by the Legislature serve at the pleasure of the appointing authority and, thus, can be removed and replaced at any time and for any reason, or for no reason at all. (§ 30312, subd. (a).)
There are no safeguards and checks which would serve to ensure that the Commission is under the primary authority and supervision of the executive branch. Rather, the retention by the Legislature of the virtually unfettered power of appointment, and wholly unfettered power of removal, over two-thirds of the voting members of the Commission serves to ensure that the Commission is under the control of the Legislature.
This is not merely a paper conclusion. It is a political reality. On motion for summary judgment, the Commission stipulated that "[the Commission] is not appointed by the Governor and is not subject to the Governor. [It] has been placed by the Legislature in the Resources Agency but is not governed by that agency." Thus, the Commission regards itself as being free of executive branch authority and supervision. Of course, whether the Commission is free of executive branch supervision and control is a legal, not a factual, question. But the Commission's view of its own position in government serves to confirm our legal conclusion that the Commission is subject to the control of the Legislature rather than executive branch of government. And this control enables the legislative branch concomitantly to control the Commission's function of implementing the Coastal Act (§ 30330), which function is the very essence of the executive power.
It is true "[t]he Legislature may, by statute, exercise broad control over the policies to be implemented and the ways and means of their accomplishment. However, acts which are done to carry out the policies and purposes already declared by the Legislature are not a legislative function." (Radioactive Materials, supra, 15 Cal.App.4th at p. 871, 19 Cal.Rptr.2d 357.) The Legislature cannot exercise direct supervisorial control over the performance of the duties of an executive officer in his or her execution of the laws; rather, it can exercise control only indirectly by dictating the manner of execution of the laws via the enactment of legislation. (See Carmel Valley, supra, 25 Cal.4th at p. 304, 105 Cal.Rptr.2d 636, 20 P.3d 533; Connerly v. State Personnel Bd. (2001) 92 Cal.App.4th 16, 63,112 Cal.Rptr.2d 5; Radioactive Materials, supra, 15 Cal.App.4th at p. 873, 19 Cal.Rptr.2d 357; cf. Bowsher v. Synar, supra, 478 U.S. at pp. 733-734, 106 S.Ct. at pp. 3191-3192, 92 L.Ed.2d at p. 601.)
Accordingly, by retaining the unilateral power to remove at will the majority of the voting members of the Commission, the legislative branch impermissibly controls the Commission's executive function of implementing the Coastal Act in violation of the separation of powers clause of California's Constitution.
Other jurisdictions that have examined similar issues have reached conclusions consistent with ours. For example, the Kansas Supreme Court held that its state's separation of powers doctrine was violated where legislators controlled an administrative body in the performance of its executive functions. (State v. Bennett (1976) 219 Kan. 285, 298, 547 P.2d 786, 797-798.) In contrast, the Louisiana Supreme Court determined that its state's separation of powers doctrine was not violated by legislative appointment of the majority of members of a board that performed executive functions because, unlike in the present case, the board members could be removed only for cause and there was no continuing relationship between the legislative branch and the appointees. (State Through Bd. of *881 Ethics v. Green (1990) 566 So.2d 623, 625-626.)
As pointed out by the United States Supreme Court in Bowsher v. Synar, supra, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (hereafter Bowsher), if the majority of an executive agency's voting members (i.e., those who implement the duties of the agency) are removable at the pleasure of members of the legislative branch, this impermissibly interferes with the executive power to see that the law is safely executed and to supervise the official conduct of executive officers. (Id. at pp. 726-727, 106 S.Ct. at pp. 3187-3189, 92 L.Ed.2d at pp. 596-597.)
Bowsher concerned the Balanced Budget and Emergency Deficit Control Act of 1985 (2 U.S.C. § 901 et seq.), which required the United States Comptroller General to identify budget reductions that the President was required to carry out when federal deficit spending exceeded a certain limit. (Bowsher, supra, 478 U.S. at pp. 717-718, 106 S.Ct. at pp. 3183-3184, 92 L.Ed.2d at p. 591.) The Supreme Court noted that, under the United States Constitution, Congress may not remove an officer charged with executive duties, such as the Comptroller General, except by impeachment. (Id. at p. 723, 106 S.Ct. at p. 3186, 92 L.Ed.2d at p. 594.) Yet Congress had retained the power to remove the Comptroller General virtually at will (id. at pp. 720, 728-732, 106 S.Ct. at pp. 3184, 3189-3191, 92 L.Ed.2d at pp. 592, 597-600), which had the effect of making the officer answerable only to Congress and vesting Congress with control of the execution of the laws in violation of the separation of powers doctrine. (Id, at pp. 726-727, 106 S.Ct. at pp. 3188-3189, 92 L.Ed.2d at pp. 596-597.) Because Congress retained removal authority over the Comptroller General, he could not be entrusted with executive powers. (Id. at pp. 732, 106 S.Ct. at p. 3191, 92 L.Ed.2d at p. 600.)
The Supreme Court explained: "To permit an officer controlled by Congress to execute the laws would be, in essence, to permit a congressional veto. Congress could simply remove, or threaten to remove, an officer for executing the laws in any fashion found to be unsatisfactory to Congress. This kind of congressional control over the execution of the laws ... is constitutionally impermissible." (Bowsher, supra, 478 U.S. at pp. 726-727, 106 S.Ct. at p. 3188, 92 L.Ed.2d at pp. 596-597.) "[O]nce Congress makes its choice in enacting legislation, its participation ends. Congress can thereafter control the execution of its enactment only indirectlyby passing new legislation." (Id. at pp. 733-734, 106 S.Ct. at p. 3191, 92 L.Ed.2d at p. 601.)
Thus, Bowsher "stands for the proposition that Congress may limit the discretion vested in the executive by enacting a statute circumscribing that discretion, but it may not control the exercise of the discretion actually vested by statute in the executive by retaining the unilateral power of removal." (Carmel Valley, supra, 25 Cal.4th at p. 305, 105 Cal.Rptr.2d 636, 20 P.3d 533.) This commonsense reasoning of Bowsher applies equally to the separation of powers clause of California's Constitution.[5]
Section 30312 gives the Speaker of the Assembly and the Senate Committee on Rules virtually unfettered authority over the appointment of a majority of the Commission's *882 members, and wholly unfettered power to remove those members at the will of the Legislature. The presumed desire of those members to avoid being removed from their positions creates an improper subservience to the legislative branch of government. And the scheme contains no safeguards or checks to ensure that those Commission members are subject to the primary authority and supervision of the executive branch. Consequently, this statutory scheme gives the Legislature excessive control over the Commission in the exercise of powers, and in the execution of duties, that are executive in character.
The result is that the legislative branch not only has the ability to declare the law, but also to control the Commission's execution of the law and its exercise of quasijudicial powers via the Legislature's control of the majority of the Commission's members. This contravenes the primary purpose of the separation of powers doctrine, which "`"is to prevent the combination in the hands of a single person or group of the basic or fundamental powers of government."` [Citations.]" (Carmel Valley, supra, 25 Cal.4th at p. 297, 105 Cal.Rptr.2d 636, 20 P.3d 533.)

V
The Commission contends that the holding in Bowsher, supra, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 is distinguishable and inapplicable in the present case because, under the United States Constitution, Congress has no power to appoint executive officers and no power to remove them other than by the impeachment process (U.S. Const., art. II, § 2, cl.2, § 4), whereas the California Constitution does not preclude the Legislature from making appointments to executive agencies or exercising the concomitant power of removal from office.
This is not a critical distinction. Bowsher did not hold that the separation of powers doctrine was violated simply because Congress lacked the constitutional authority to remove an executive officer except by impeachment. The doctrine was violated because Congress's ability to remove the Comptroller General virtually at will interfered with the execution of the laws, a matter plainly outside the Congressional sphere. The high court noted that, because the structure of the Constitution does not permit Congress to execute the laws, Congress could not grant to an officer under its control what it did not possess. (Bowsher, supra, 478 U.S. at p. 726, 106 S.Ct. at p. 3188, 92 L.Ed.2d at p. 596.) What is of particular importance to the resolution of the appeal before us is the high court's conclusion that "[t]o permit the execution of the laws to be vested in an officer answerable only to [the legislative branch] would, in practical terms, reserve in [that branch] control over the execution of the laws." (Ibid.) This commonsense principle applies with equal force to our state separation of powers determination that the appointment mechanism for the Commission, an executive branch agency, materially impairs one of its core functions, namely execution of the law.
The Commission also argues that Marine Forests's constitutional challenge is infirm because it has not presented an "as applied" challenge or made any factual allegations that the Legislature has directed or dictated the actions of its appointees; rather, it has made a facial challenge and thus must demonstrate that the statute's provisions "`inevitably pose a present total and fatal conflict with applicable constitutional prohibitions.'" (Quoting Pacific Legal Foundation v. Brown, supra, 29 Cal.3d at p. 181, 172 Cal.Rptr. 487, 624 P.2d 1215.)
*883 However, Marine Forests does not need to demonstrate that the legislative appointing authorities have attempted to interfere with the Commission members' execution of the Coastal Act. It is the Commission members' presumed desire to avoid removalby pleasing their legislative appointing authoritieswhich creates the subservience to another branch that raises separation of powers problems. (Bowsher, supra, 478 U.S. at p. 727, fn. 5, 106 S.Ct. at p. 3188, fn. 5, 92 L.Ed.2d at p. 597; MWAA v. CAAN, supra, 501 U.S. at p. 269, fn. 15, 111 S.Ct. at p. 2308, fn. 15, 115 L.Ed.2d at p. 254.)[6] As noted previously, "[t]o permit the execution of the laws to be vested in an officer answerable only to [the legislative branch] would, in practical terms, reserve in [that branch] control over the execution of the laws." (Bowsher, supra, 478 U.S. at p. 726, 106 S.Ct. at p. 3188, 92 L.Ed.2d at p. 596.) Thus, this is not simply a hypothetical problem as the Commission suggests.[7]
The Commission intimates that there is no problem with the Coastal Act's appointment mechanism because the Governor signed, and therefore approved of, the legislation giving the legislative branch the ability to appoint and remove at will the majority of the voting members of the Commission. But "the Governor can no more concede executive power to a legislative committee than a committee can be permitted to usurp it. [Citations.] And the Governor's consent to an unlawful legislative act does not validate the act. [Citations.]" (Radioactive Materials, supra, 15 Cal.App.4th at pp. 873-874, 19 Cal. Rptr.2d 357.) Hence, the Governor's approval of an appointment structure that *884 interferes with the executive power does not rectify its constitutional infirmity.
Pointing out administrative agencies in which fewer than a majority of the members are appointed by the Governor or in which members are removable at will, the Commission argues that this demonstrates there is nothing unique about the setup of the Commission and, thus, there is no separation of powers violation. However, the Commission does not point to any administrative agency that (1) performs executive functions as opposed to merely gathering information and making policy recommendations, which are incidental to legislative functions, and (2) for which the Legislature appoints a majority of the members and may remove them at will. In any event, even if other administrative agencies exist with an appointment structure similar to that of the Commission, this does not establish there is no separation of powers violation in the present case.
We note that in Parker v. Riley (1941) 18 Cal.2d 83, 113 P.2d 873, the California Supreme Court concluded the fact that the Commission on Interstate Cooperation was comprised of five members of the Senate Committee on Interstate Cooperation, five members of the Assembly Committee on Interstate Cooperation, and five members appointed by the Governor did not violate the separation of powers provisions of the California Constitution, or violate the constitutional prohibition against legislators holding other offices or positions of trust. (Id. at pp. 85, 87-90, 113 P.2d 873.) This was so because the duties imposed on said commission were incidental and ancillary to the lawmaking functions of the Legislature. (Id. at pp. 88-89, 113 P.2d 873.) However, the Supreme Court warned "[i]t must not be assumed ... that legislative activities may be expanded indefinitely through the creation of separate agencies responsible primarily to the legislature. This sort of expansion would soon lead to a legislative usurpation of power incompatible with the proper exercise of its lawmaking function." (Parker v. Riley, supra, 18 Cal.2d at p. 88,113 P.2d 873.)
The appointment mechanism specified in the Coastal Act is just such an impermissible expansion. It materially impairs the executive power's ultimate authority over the execution of the laws because it allows the legislative branch to retain majority control over the Commission's implementation of the Coastal Act, and the Commission's duties are not limited to those that are incidental and ancillary to the lawmaking functions of the legislature.
Because the majority of the Commission's voting members are controlled by the legislative branch, the separation of powers doctrine precludes the Commission from being entrusted with the exercise of executive powers or of quasi-judicial powers that are incidental to the executive function of implementing the law. (Cf. Bowsher, supra, 478 U.S. at pp. 726, 732, 106 S.Ct. at pp. 3188, 3191, 92 L.Ed.2d at p. 596-597, 600.) Accordingly, the trial court acted properly in enjoining the Commission from granting, denying, or conditioning permits, and from issuing and hearing cease and desist orders.[8]

VI
It is appropriate here to emphasize that our legal conclusionthat the process for appointing voting members of the Commission violates the separation of powers doctrineis limited to the specific facts of this case, where a majority of the Commission's voting members are appointed by the legislative branch and may be removed *885 at the pleasure of the legislative branch and there are no safeguards protecting against the Legislature's ability to use this authority to interfere with the Commission members' executive power to execute the laws. We express no opinion regarding the propriety of legislative appointments to administrative agencies under circumstances different than presented here.
We also note that Marine Forests made a timely separation of powers objection and pursued its remedies in a timely manner. (See Moffat v. Moffat (1980) 27 Cal.3d 645, 656, 165 Cal.Rptr. 877, 612 P.2d 967 [the waiver rule may preclude a party from making a collateral attack on proceeding in which the party participated without objection]; Armstrong v. Armstrong (1976) 15 Cal.3d 942, 950-951, 126 Cal.Rptr. 805, 544 P.2d 941 [same]; see also Ryder v. United States (1995) 515 U.S. 177, 182-183, 115 S.Ct. 2031, 2035-2036, 132 L.Ed.2d 136, 143 ["one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred"].)
We need not, and do not, consider the rights and interests of other parties to prior actions of the Commission.

DISPOSITION
The judgment is affirmed. The trial court is directed to vacate the stay that it issued.
We concur: DAVIS and ROBIE, JJ.
NOTES
[1] We grant the Commission's request for judicial notice of a portion of the ballot pamphlet and the Report of the California Constitution Revision Commission concerning the repeal of former article XX, section 4, and a portion of the ballot pamphlet concerning the repeal of former article XX, section 16. (Horwich v. Superior Court (1999) 21 Cal.4th 272, 277, fn. 4, 87 Cal.Rptr.2d 222, 980 P.2d 927.)
[2] In contrast, article II, section 2, clause 2 of the United States Constitution provides that the President "shall nominate, and by and with the advice and consent of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments."
[3] Amicus curiae, Signal Landmark and Hearthside Homes (Signal), argues that the Legislature no longer has the power to make appointments because the constitutional provision regarding this power was repealed. Accordingly, Signal construes Government Code section 1300 as granting to the Governor the power of appointment previously held by the Legislature. We disagree. Restrictions on the authority of the Legislature must be narrowly construed, and limitations that are not established expressly or by necessary implication cannot be imposed. (Pacific Legal Foundation v. Brown (1981) 29 Cal.3d 168, 180, 172 Cal.Rptr. 487, 624 P.2d 1215.) The history of the repeal of former section 4 of article XX, set forth in the body of this opinion, indicates that the People did not intend to deprive the Legislature of the ability to reserve the power of appointment to itself. Moreover, as the Supreme Court repeatedly has stated, "we do not look to [California's] Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited. In other words, unless restrained by constitutional provision, the legislature is vested with the whole of the legislative power of the state." (Fitts v. Superior Court (1936) 6 Cal.2d 230, 234, 57 P.2d 510; accord, Collins v. Riley (1944) 24 Cal.2d 912, 916, 152 P.2d 169; see also California Housing Finance Agency v. Patitucci (1978) 22 Cal.3d 171, 175, 148 Cal.Rptr. 875, 583 P.2d 729 ["the California Constitution, unlike its federal counterpart, is a limitation or restriction on the powers of the Legislature, rather than a grant of power to it"].) Hence, the repeal of former section 4 of article XX had no effect on the Legislature's power of appointment because nothing in the California Constitution grants to the Governor the sole or paramount power of appointment or prohibits the Legislature from exercising such power, which is not inherently an executive function. (People v. Freeman, supra, 80 Cal. at pp. 235-236, 22 P. 173.) Furthermore, Signal has misinterpreted the effect of Government Code section 1300. First, the plain language of section 1300 discloses the Governor does not have a superior right to that of the Legislature to appoint the officers of administrative agencies. Second, section 1300 is a statutory provision, and it is within the prerogative of the Legislature to alter its application through a subsequently enacted and more specific statute.
[4] Relying on Brown v. Superior Court, supra, 15 Cal.3d 52, 123 Cal.Rptr. 377, 538 P.2d 1137 and other cases cited in their briefs and petition for rehearing, the Commission claims that an "extensive body of law addressing the removal question" has "reaffirmed an appointing authority's power of removal and blessed a `politically responsive' appointment scheme that is virtually identical to the one [used in appointing the voting members of the Commission]." However, the Commission fails to recognize that none of the cases upon which it relies concerned a separation-of-powers challenge to the Legislature's ability to remove its appointees at will, let alone to its ability to remove a majority of an executive agency's officers at will. "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (Ginns v. Savage (1964) 61 Cal.2d 520, 524, fn. 2, 39 Cal.Rptr. 377, 393 P.2d 689; accord. People v. Albritton (1998) 67 Cal.App.4th 647, 655-656, 79 Cal.Rptr.2d 169.)
[5] The California Supreme Court noted that Bowsher "might cast doubt" on the Legislature's authority to enact a statute vesting the legislative branch with the unilateral power to remove an agency director from office by joint resolution, but the court "put[ ] aside" the question of whether it was bound to adopt the reasoning of the United States Supreme Court in interpreting the California Constitution's separation of powers clause. (Carmel Valley, supra, 25 Cal.4th at p. 305, 105 Cal. Rptr.2d 636, 20 P.3d 533.)
[6] The Commission claims this presumption, akin to that recognized by the United States Supreme Court in Bowsher, supra, 478 U.S. at page 727, fn. 5 [106 S.Ct. 3188, fn. 5, 92 L.Ed.2d at p. 597], is erroneous because it "conflicts with California's legal presumption, not addressed by the opinion, that public officials will comply with the law." (Citing Evid. Code, § 664 ["It is presumed that official duty has been regularly performed...."].)

The Commission overlooks that there is a similar presumption with respect to federal officials which, thus, applied in Bowsher. (United States v. Chemical Foundation (1926) 272 U.S. 1, 14-15 [47 S.Ct. 1, 71 L.Ed. 131, 142-143] ["The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties"]; United States v. State of Washington (9th Cir.1956) 233 F.2d 811, 816 [there is a presumption that "the ordinary course of business was followed and that the law was obeyed; also that official duty was regularly and faithfully performed"]; La Porte v. Bitker (7th Cir.1944) 145 F.2d 445, 447 ["a presumption of regularity ... must be accorded the acts of a government official"].)
In light of significant political influences that affect the decisionmaking process of the Commission, and the broad discretion possessed by members of the Commission in executing the law and making quasi-judicial determinations, we would be naive, indeed, to conclude that the legal presumption of Evidence Code section 664 has not been rebutted by another realistic, commonsense presumptionmembers of the Commission, who are subject to removal at will by the Senate Committee on Rules and the Speaker of the Assembly, will "`desire to avoid removal by pleasing [their appointing authorities], which creates the here-and-now subservience to another branch that raises separation-of-powers problems.'" (Bowsher, supra, 478 U.S. at p. 727, fn. 5 [106 S.Ct. 3188, fn. 5, 92 L.Ed.2d at p. 597].)
[7] Amici curiae ask us to take judicial notice of evidence they submitted as purported examples of the Legislature's interference with Commission members' execution of their duties. The Commission opposes this request on various grounds. Because we have concluded that Marine Forests need not demonstrate that any actual interference has occurred, the request for judicial notice is denied.
[8] Amicus curiae briefs have been filed by numerous entities. To the extent those briefs raise arguments that are not presented in Marine Forests's petition for writ of mandate, or raise arguments that were not tendered in the trial court, we decline to address them. (California Assn. for Safety Education v. Brown (1994) 30 Cal.App.4th 1264, 1274-1275, 36 Cal.Rptr.2d 404 [amicus curiae must accept the issues urged by the appealing parties, and any additional questions presented in a brief filed by an amicus curiae will not be considered].)