[No. A100099. First Dist., Div. Four. Feb. 28, 2003.]

CITY OF HALF MOON BAY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
JOYCE YAMAGIWA, as Trustee, etc., Real Party in Interest.

796

## COUNSEL

Meyers, Nave, Riback, Silver & Wilson, Julia L. Bond, Rick W. Jarvis and Amrit Kulkarni for Petitioner City of Half Moon Bay.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, J. Matthew Rodriquez, Assistant Attorney General, and Tara L. Mueller, Deputy Attorney General, for Petitioner California Coastal Commission.

No appearance for Respondent.

Stoel Rives, Edgar B. Washburn, Anne E. Mudge, Christine W. Griffith, Kelly A. Cole; Berger & Norton, Edward G. Burg and Craig M. Collins for Real Party in Interest.

## OPINION

**RIVERA, J.,**—This case comes to us on a petition for extraordinary relief. The issue is whether the California Coastal Commission has appellate jurisdiction to modify a local government's permit approval that was issued solely to comply with a court order in a proceeding in which the commission was a party litigant. We conclude the commission does not have appellate jurisdiction under these circumstances. Accordingly, we deny the peremptory writ.

### I. FACTS AND PROCEDURAL HISTORY

This case has a long and complicated procedural history, stretching back to plans for development in the 1970's. We will recite only those facts necessary to the understanding and resolution of the narrow issue we are deciding in this writ proceeding.

## A. Half Moon Bay's Review of the Beachwood Subdivision

Real party in interest Joyce Yamagiwa is the owner of approximately 24 acres of undeveloped property known as the Beachwood Subdivision.[1] The property is located in the City of Half Moon Bay (the City), to the east of coastal State Highway 1. In 1990, the City approved a vesting tentative map for 85 residential lots on the site pursuant to the Subdivision Map Act (Gov. Code, § 66410 et seq.).[2] However, development plans stalled in 1991 when the City imposed a moratorium on the issuance of building permits for structures that required a new sewer permit. The moratorium ultimately extended through March 1998.

Because the Beachwood Subdivision is in the coastal zone, under the California Coastal Act of 1976 (the Coastal Act),[3] the site could not be developed without a coastal development permit (CDP). (§ 30600, subd. (a).) Accordingly, in 1997 or 1998—in anticipation of the expiration of the sewer moratorium—Beachwood applied for a CDP from the City.[4]

The City reviewed the application for compliance with its certified local coastal program (LCP). This review required the City to determine, inter alia, whether the proposed development would have an adverse impact on any wetlands. The City's LCP contained the following relevant definition: "Wetland is an area where the water table is at, near, or above the land surface long enough to bring about the formation of hydric soils or to support the growth of plants which normally are found to grow in water or wet ground. Such wetlands can include mudflats (barren of vegetation), marshes, and swamps. Such wetlands can be either fresh or saltwater, along streams (riparian), in tidally influenced areas (near the ocean and usually below extreme high water of spring tides), marginal to lakes, ponds, and man-made impoundments. Wetlands do not include areas which in normal rainfall years are permanently submerged (streams, lakes, ponds and impoundments), nor marine or estuarine areas below extreme low water of

---

[1]The record suggests that ownership of the property changed during the time period encompassed by the record. For the sake of simplicity we, as did Yamagiwa in her briefs before us, will refer to the owner(s) herein as "Beachwood."

[2]As a general matter, the approval of a "vesting tentative map" means that, with certain exceptions, the development will be regulated only by the ordinances, policies and standards in effect on the date the application was complete. (Gov. Code, §§ 66498.1, subd. (b), 66474.2, subd. (a).)

[3]Public Resources Code section 30000 et seq. All further statutory references are to the Public Resources Code, unless otherwise stated.

[4]Under the Coastal Act, if a local government has a local coastal program that has been certified by the commission as being in compliance with state law, application for a CDP is made to the local government rather than to the commission. (§ 30519, subd. (a).)

spring tides, nor vernally wet areas where the soils are not hydric."[5] In explaining the reasons for adopting this definition, the LCP stated: "This definition embraces several important concepts which are relevant to the San Mateo Coast: (1) the relationship of the water table with respect to the ground surface; (2) the duration of the water on or at the surface; (3) the soil types involved with the permanent or temporary saturated conditions; and (4) the flora and fauna adapted to the wet conditions. [¶] The most important feature which acts as a common denominator is the soil as indicated in Item 3, above."

During the processing of Beachwood's application for a CDP, a controversy developed about how to interpret the LCP's definition of wetlands. Specifically, the parties disagreed about how to reconcile two of its provisions: (1) the provision that a wetland is "an area where the water table is at, near, or above the land surface long enough *to bring about the formation of hydric soils or to support the growth of plants which normally are found to grow in water or wet ground*," and (2) the provision that wetlands do not include "*vernally wet areas where the soils are not hydric*." (Italics added.) Beachwood and its consultants took the position that the exception for vernally wet areas where the soils were not hydric meant that such areas were excluded from the definition of wetlands, even in the presence of hydrophytic vegetation.[6] The City asked the commission for an advisory opinion on the issue. The commission took the position that the LCP defines wetlands to include areas where the water table is near the land surface long enough to support the growth of wetland vegetation, even if the water table is not near the surface long enough to support the formation of hydric soils, and that the exclusion of vernally wet areas "excludes only vernally wet areas with neither hydric soils nor hydrophytes."

During its review of the CDP application, the City received expert evidence that there was hydrophytic vegetation on the property, and Beachwood has not contended otherwise.[7] The City also received expert reports on whether hydric soils existed on the site. While some of these reports indicated that the soils on the site did not have the physical characteristics

---

[5]"Vernally wet" is variously defined as wet during the spring, wet after rainfall or "temporarily wet during the winter or spring months." A report in the record defines hydric soils as follows: "A hydric soil is a soil that formed under conditions of saturation, flooding, or ponding long enough during the growing season to develop anaerobic conditions in the upper part." (Italics omitted.)

[6]Species typically adapted for life in saturated soil conditions are known as "hydrophytic" vegetation.

[7]Beachwood also does not dispute that a relatively small area in the southeast portion of the property contains wetlands. The proposed development avoids that area entirely. The dispute in this case concerns the existence of wetlands on other areas of the property.

commonly found in hydric soils, one report stated: "[O]ur direct observation of long duration ponding on the site under circumstances that do not appear to be particularly abnormal is considered by [the National Technical Committee for Hydric Soils] to be a perfectly suitable field indicator of hydric soil conditions."

The City held a hearing on Beachwood's application for the CDP on March 21, 2000, and adopted a resolution denying the application on May 2, 2000. Basing its decision on the expert reports from its wetlands consultant, LSA Associates, Inc., the city council found "there is clear evidence that the nine areas of the site identified by both LSA and [Beachwood's consultant] as including extensive hydrophytic plant cover are areas where the water table is at, near or above the land surface long enough to bring about the formation of the hydrophytic vegetation found in these areas. As such these areas are wetlands as defined in the City's LCP."

B. *The First Writ of Mandate*

On May 19, 2000, Beachwood petitioned the Superior Court of San Mateo County for a writ of mandate (case No. 413013), asking the court to command the City to approve the CDP in conformity with the vesting tentative map the City had approved in 1990. (§ 30802.) Beachwood's petition also included a complaint for damages and other relief. Beachwood argued that the court should exercise its independent judgment; that under the correct interpretation of the LCP, the evidence did not support a finding of wetlands; and that the City lacked discretion to change a finding made in 1990, in connection with approving the vesting tentative map, that the project was consistent with the LCP. By stipulation of the parties and pursuant to section 30802, the commission intervened in the action, filed an opposition brief, and appeared and argued at the hearing on the petition for writ of mandate.

The superior court granted the petition for writ of mandate on February 23, 2001, ordering the City to issue the CDP to Beachwood in accordance with the vesting tentative map (the first writ of mandate).[8] In its accompanying statement of decision, the court concluded that the City's interpretation of the wetlands definition was "not reasonable" and appeared to "circumvent the plain language of the LCP." The statement of decision also found that the reports in the record would not support a finding of hydric

_____

[8]Because several causes of action which the parties had agreed would be heard separately from the writ of mandate causes of action remained to be adjudicated, the court did not enter final judgment.

soils, and that Beachwood had a fundamental vested right that required the court to exercise its independent judgment.

## C. *Appeal to the Commission*

The parties, including the commission, then entered into a stipulation to stay litigation of all but one of the remaining causes of action. The stipulation recited that, in order for the parties to reach a settlement, "it will first be necessary for any proceedings before the Commission to be concluded, or for a determination to be reached by a court of law that the Commission lacks appellate jurisdiction over the CDP. An appeal to the Commission cannot occur until after the City has approved the CDP." In accordance with this stipulation, on May 4, 2001, the trial court stayed the litigation.

The City complied with the writ of mandate and approved the CDP on March 20, 2001. Four people, including two coastal commissioners, then appealed the City's action to the commission. On May 10, 2001, the commission determined it had jurisdiction to hear the appeal under the Coastal Act and that the appeal raised a substantial issue. (§§ 30603, subd. (b), 30625, subd. (b)(2).)[9] Beachwood then filed a second petition for writ of mandate and complaint for declaratory and injunctive relief in the San Mateo County Superior Court (case No. 417189) on June 11, 2001, asking the court to order the commission to set aside its assertion of jurisdiction. However, the court did not hear the matter before the commission heard the appeal.

Pursuant to section 30621, the commission held a de novo hearing on Beachwood's CDP application on September 14, 2001. After hearing additional evidence not presented to the City, the commission approved the CDP, but only after adopting conditions recommended in a staff report, including the elimination of 58 residential lots and corresponding roads and infrastructure improvements in order to avoid wetlands. The staff report concluded: "The 'vernally wet' exception to the City's wetland definition, which played a part in previous decision-making regarding the extent of wetlands on the site, is not relevant. This exception, which has been subject to dispute, due to uncertainty regarding its precise meaning, excludes from wetland definition 'vernally wet areas where the soils are not hydric'. *Because new evidence and re-analysis of existing evidence in the record support a conclusion that soils found on numerous parts of the site are indeed hydric and that the site*

---

[9]Below, Beachwood contended the commission could not assert jurisdiction by relying on the definition of wetlands contained in its regulations (Cal. Code Regs., tit. 14, § 13577, subd. (b)), rather than on the definition of wetlands in the LCP as interpreted by the court. However, that contention has not been briefed in this writ proceeding. Accordingly, we do not consider it.

*contains seasonal wetlands and not vernally wet areas, this exception is no longer an issue.*" (Italics added.)

### D. The Second Writ of Mandate

On November 13, 2001, Beachwood filed a supplemental and amended petition for writ of mandate and complaint for declaratory relief and damages in case No. 417189, challenging the commission's action in approving the permit with conditions. The case was consolidated with Beachwood's earlier petition for writ of mandate (case No. 413013), as well as another related action (case No. 402781).

On July 17, 2002, the superior court granted the petition and ordered the commission "to set aside and vacate any and all acts, rulings, findings and decisions that were made or rendered during the Commission's assumption of appellate jurisdiction over Petitioner's Coastal Development Permit . . . ." In its statement of decision, the court stated four bases for its order: (1) The commission only has jurisdiction under section 30603 over projects "approved" by a local government; here, the City did not "approve" the CDP, but only reluctantly complied with a directive of the court. (2) The effect of the commission's action would be to overturn the court's writ ordering the City to approve the CDP in case No. 413013, which is impermissible. (3) The commission's actions violated the doctrine of exhaustion of administrative remedies. (4) The commission was bound by the superior court's order in case No. 413013. The court also noted that other causes of action remained to be adjudicated in the case.

### E. Petition for Extraordinary Relief

The commission and the City petitioned this court for a writ of mandate on September 16, 2002, asking us to stay enforcement of the superior court's order granting the second writ of mandate (case No. 417189), and to review the superior court's actions in issuing both the first writ of mandate (case No. 413013) and the second writ of mandate (case No. 417189). On September 17, 2002, we issued a stay. On November 6, 2002, we summarily denied the writ as to the superior court's action in case No. 413013, issued an order to show cause as to the superior court's action in case No. 417189, and ordered that the stay issued on September 17, 2002, remain in effect.[10]

---

[10]The Third District Court of Appeal recently held that the process for appointing voting members of the commission violates the separation of powers doctrine. (*Marine Forests Society v. California Coastal Com.* (2002) 104 Cal.App.4th 1232 [128 Cal.Rptr.2d 869].) However, the question of the constitutionality of the commission is not before us in this writ

## II. Discussion

### A. *Writ Review Is Appropriate*

■ Courts of Appeal are normally reluctant to grant petitions for extraordinary relief. (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1271-1273 [258 Cal.Rptr. 66].) However, "the Supreme Court, in various cases, has stated general criteria for determining the propriety of an extraordinary writ." (*Id.* at p. 1273.) These criteria include circumstances in which "the party seeking the writ lacks an adequate means, such as a direct appeal, by which to attain relief" or "the petitioner will suffer harm or prejudice in a manner that cannot be corrected on appeal." (*Id.* at p. 1274.) Here, in the absence of writ relief, irreparable harm could result. The result of the second writ of mandate appears to be that development of the Beachwood Subdivision could proceed immediately. An appeal is not available because causes of action remain to be litigated. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [29 Cal.Rptr.2d 804, 872 P.2d 143]; see also *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 [107 Cal.Rptr.2d 149, 23 P.3d 43].) In these circumstances, extraordinary relief is appropriate.

### B. *Standard of Review*

■ We are reviewing a narrow issue here: Where a local government approves a project in response to a writ of mandate ordering it to do so, and the commission was a party to the writ proceedings, may the commission assert jurisdiction to hear an appeal of the approval? This is a legal issue subject to independent review. ■ " 'If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently.' " (*20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 271 [32 Cal.Rptr.2d 807, 878 P.2d 566], quoting *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278].)

### C. *The Coastal Act*

Under the Coastal Act, each local government within the coastal zone must prepare an LCP for the portion of the coastal zone within its jurisdiction (§ 30500, subd. (a)). The local government may submit the LCP to the

---

proceeding, and we do not address it here. We express no view as to the effect, if any, of *Marine Forests Society v. California Coastal Com.* on the ultimate outcome of this case.

commission; if the commission certifies it as conforming to the policies of the Coastal Act, review authority for development within that portion of the coastal zone passes to the local government. (§§ 30510, 30519, subd. (a).)

With exceptions not relevant here, the denial of a CDP application may not be appealed to the commission. (See § 30603, subd. (a).) After such a denial, an aggrieved party may seek a writ of mandate pursuant to Code of Civil Procedure section 1094.5. (Pub. Resources Code, § 30802.) "The commission may intervene in any such proceeding upon a showing that the matter involves a question of the conformity of a proposed development with a certified local coastal program or certified port master plan or the validity of a local government action taken to implement a local coastal program or certified port master plan." (*Ibid.*)

If, on the other hand, the local government approves an application for a CDP, its action may be appealed to the commission by the applicant, any aggrieved person, or any two members of the commission. (§ 30625, subd. (a); Cal. Code Regs., tit. 14, § 13111, subd. (a).) The commission has limited jurisdiction to hear the appeal. Insofar as it is applicable here, Public Resources Code section 30603 provides: "(a) After certification of its local coastal program, *an action taken by a local government* on a coastal development permit application may be appealed to the commission for only the following types of developments: [¶] . . . [¶] (2) *Developments approved by the local government* . . . that are located on tidelands, submerged lands, public trust lands, *within 100 feet of any wetland*, estuary, or stream . . . ." (Italics added.) In such an appeal, "[t]he grounds for an appeal pursuant to subdivision (a) shall be limited to an allegation that the development does not conform to *the standards set forth in the certified local coastal program* or the public access policies set forth in this division." (*Id.*, subd. (b)(1), italics added.) If an action is appealable, the commission must hear the appeal unless it determines no substantial issue exists with regard to the grounds for the appeal. (§ 30625, subd. (b)(2).) On appeal, the commission reviews the matter de novo, and may take additional evidence not received by the local government. (§ 30621, subd. (a); Cal. Code Regs., tit., 14, § 13118; *REA Enterprises v. California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 612 [125 Cal.Rptr. 201] [construing comparable provision in California Coastal Zone Conservation Act of 1972]; *Ciani v. San Diego Trust & Savings Bank* (1991) 233 Cal.App.3d 1604, 1615, fn. 4 [285 Cal.Rptr. 699].)

D. *The Commission Did Not Have Authority to Hear the Appeal*

 As stated, the question before us is whether the commission had authority in this case to hear the appeal from the approval of the CDP.

Beachwood argues that the commission's appeal to itself and its decision on that appeal, in effect, overturned the trial court's first writ of mandate. The commission and the City concede the commission could not make a decision reversing or superseding a binding superior court order. They contend, however, that the commission did not reverse the trial court's order because it was reviewing the *project*, rather than the first writ of mandate, and because the trial court's order was not final. We agree with Beachwood that the effect of the commission's action was to overturn a valid court order, which it cannot do.

In denying Beachwood's application for a CDP, the City relied exclusively on the presence of wetlands. Beachwood challenged this denial in court, arguing the evidence did not support a finding of wetlands under the correct interpretation and that the City was *required* to issue the CDP. In response, the City did not contend there were grounds other than its wetlands finding for exercising its discretion to deny the CDP. Nor did it ask the court to remand the matter for further proceedings in the event the petition was granted.[11] Thus, when the trial court concluded Beachwood was correct, it ordered the City to issue the CDP.[12]

In issuing that first writ of mandate, the trial court did not merely rule that the record did not support a finding of wetlands under the correct interpretation of the LCP; it ruled Beachwood must be issued a CDP *in conformance with the 1990 vesting tentative map*. As a party to the writ proceedings, the commission was bound by this ruling, whether or not it was "final." (See *Martin v. Martin* (1970) 2 Cal.3d 752, 759 [87 Cal.Rptr. 526, 470 P.2d 662].)

---

[11]We are aware that at oral argument below the *commission* asked the trial court, if it granted the petition, for a remand in order to preserve the *commission's* appellate jurisdiction. That is not the same thing as asking for a remand to allow the *City* to exercise its discretion as to any remaining matters.

In supplemental exhibits submitted with its petition for rehearing, the commission seeks to show that *after* the trial court issued its decision but prior to its issuing the writ of mandate, the commission raised objections to Beachwood's proposed writ of mandate on the ground that it called for the City to "issue," rather than "approve" the CDP, and pointing out in those objections that the commission might have additional grounds to deny the CDP. The supplemental exhibits also show that, before issuing the writ of mandate, the trial court received copies of correspondence among the parties in which, among other things, the commission and the City took the position that the trial court should not make the ultimate decision for the City, but rather should remand the matter to the City for further proceedings consistent with the court's decision.

The time to submit supporting documents to this court was when the writ petition was filed, not at the time of a petition for rehearing. (Cal. Rules of Court, rule 56(c).) In any case, the recently submitted exhibits do not affect our conclusions, but support Beachwood's contention that the trial court expressly rejected the remand option.

[12]In view of the limited issue before us, we do not consider the *correctness* of the first writ of mandate; we only consider its *effect*.

As the trial court in the second writ of mandate pointed out, orders made in the course of an action are binding upon the litigants and court alike so long as they have not been set aside. (*City of Los Angeles v. Oliver* (1929) 102 Cal.App. 299, 325 [283 P. 298].)

After the first writ of mandate issued, the City and the commission had at least two other options. They could have sought immediate extraordinary relief from this court. (See *Morehart v. County of Santa Barbara, supra,* 7 Cal.4th at pp. 743-744.) Alternatively or in addition, they could have litigated the remaining causes of action to judgment and then filed an appeal. (Code Civ. Proc., § 904.1, subd. (a)(1).) They did neither of those things. Instead, the City simply complied with the writ and issued the CDP. The parties then agreed to stay the remaining causes of action while the issue of the commission's appellate jurisdiction was resolved.

Having opted for this procedural path, the commission must live with its consequences: At the time it heard the appeal, the commission was still bound by the court's order that Beachwood was entitled to a CDP consistent with the 1990 vesting tentative map. Under these admittedly unusual circumstances, the commission's actions in hearing the appeal and imposing new conditions on the CDP directly and impermissibly contravened the trial court's order.

■ "The state Constitution limits the power to overturn a superior court's order to the appellate courts." (*People v. Gonzalez* (1996) 12 Cal.4th 804, 815 [50 Cal.Rptr.2d 74, 910 P.2d 1366], citing Cal. Const. art. VI, § 11.) As our Supreme Court stated in another context: "Our Constitution . . . provides the Legislature with no authority to set itself above the judiciary by discarding the outcome or readjudicating the merits of particular judicial proceedings." (*Mandel v. Myers* (1981) 29 Cal.3d 531, 547 [174 Cal.Rptr. 841, 629 P.2d 935].)[13]

Beachwood contends that, in any event, the commission's appellate jurisdiction was not triggered because the City's approval of the CDP was an involuntary act, which is not the kind of "approval" contemplated by the statute. The commission replies that *any* "approval" serves as a trigger for the commission's appellate jurisdiction under section 30603, whether or not the City is actively exercising its discretion. (*Ciani v. San Diego Trust &*

---

[13]This rule is not limited to the Legislature. Our Supreme Court cited *Mandel v. Myers, supra,* 29 Cal.3d at page 547, in concluding that a county, although "free to challenge court orders in the courts, . . . is impotent to review and reject such orders on its own." (*Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 325 [204 Cal.Rptr. 165, 682 P.2d 360], fn. omitted.)

*Savings Bank, supra,* 233 Cal.App.3d at p. 1615 [where coastal development permit is "deemed approved" by operation of law the statutory right of appeal to the commission is not cut off].) But the dispositive factor here is neither the City's exercise of discretion nor the meaning of "approved" under the statute; it is the trial court's order. The record is plain that the City approved the CDP *only* as a response to a direct judicial order. Having chosen to comply rather than taking other available actions in response to the writ of mandate, the City cannot characterize its action as anything other than the implementation of a court order. As has been explained above, a court order cannot be overturned or modified except by a subsequent court order.

In sum, we conclude the superior court correctly granted the second writ of mandate ordering the commission to set aside its actions and decisions made during its assumption of appellate jurisdiction over the CDP, while it was still bound as a party litigant by the first writ of mandate. Because we uphold the superior court's order on this ground, we need not address whether the alternative bases for the order were also sound. In reaching this conclusion, we express no view on what the result would have been if the commission had not intervened as a party in the first writ proceedings, or if the case had been presented in a different procedural posture.

### III. Disposition

The petition for writ of mandate and/or prohibition in case No. 417189 is denied, and the order to show cause is discharged. The stay issued by this court on September 17, 2002, shall remain in effect until the remittitur issues. (Cal. Rules of Court, rule 25(a).)

Kay, P. J., and Reardon, J., concurred.

A petition for a rehearing was denied March 27, 2003, and the opinion was modified to read as printed above.